IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KODWO BEDU SEKYI,                    :
                                     :     K17A-10-001 WLW
        Appellant-Defendant Below,   :
                                     :
        v.                           :
                                     :
DELAWARE BOARD OF                    :
PHARMACY,                            :
                                     :
        Appellee-Plaintiff Below.    :

Submitted: June 7, 2018
Decided: August 29, 2018

**OPINION AND ORDER**

Upon an Appeal from the Decision
of the Delaware Board of Pharmacy.
*Reversed and Remanded.*

Gregory A. Morris, Esquire of Liguori & Morris, Dover, Delaware; attorney for
Appellant/Defendant-Below.

Eileen Kelly, Esquire of the Delaware Department of Justice, Dover, Delaware;
attorney for appellee/Plaintiff-Below.

WITHAM, R.J.

Before the Court is Kodwo Bedu Sekyi's (hereinafter, the "Appellant") appeal from the Delaware Board of Pharmacy's (hereinafter, the "Pharmacy Board") decision to impose sanctions, including a two-year suspension of the Appellant's pharmacist license, against the Appellant based upon a hearing officer's (hereinafter, the "Hearing Officer") determination that the Appellant violated certain provisions of the Pharmacy Board's Practice Act, Chapter 25 of Title 24 (hereinafter, the "Practice Act") of the Delaware Code, and certain Pharmacy Board regulations. After an extensive review of the record, it is clear to the Court that the Pharmacy Board improperly considered additional evidence, that was not included in the written record, when the Pharmacy Board imposed the sanctions against the Appellant. Accordingly, the Pharmacy Board's decision is hereby REVERSED and REMANDED.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The facts leading to the Pharmacy Board's sanctions against the Appellant are undisputed. The Appellant was, prior to the Pharmacy Board's proceedings, a permit holder and pharmacist-in-charge (hereinafter, "PIC") of the Pill Box Pharmacy in Milford, Delaware.

In July and August of 2015, the Drug Enforcement Administration (hereinafter, the "DEA") and Delaware's Division of Professional Regulation inspected the Pill

---

[1] Since this matter involves an appeal of an administrative agency's decision, the Court confines its review to the facts contained in the entire record. It is those facts that are referenced herein.

2

Box Pharmacy. The investigation uncovered a number of violations of federal and State laws and regulations pertaining to the operation of pharmacies. Many of those violations formed the basis of the allegations against the Appellant before the Hearing Officer and the Pharmacy Board.

On May 23, 2017, the Hearing Officer held a hearing pursuant to the authority granted by 29 *Del. C.* § 8735(v)(1). The Hearing Officer recommended, based on his factual findings, the following conclusions of law:

The Appellant violated 24 *Del. C.* § 2515(a)(6) and Pharmacy Board Regulation 2.1.1 in that he violated sections of both the Practice Act and Board regulations.

The Appellant violated Pharmacy Board Regulation 3.1.2.2 in his failure to maintain records required by the Uniform Controlled Substance Act and other relevant State and federal regulations.

The Appellant violated Pharmacy Board Regulation 3.1.2.3 in that he failed to maintain proper security at the Pill Box Pharmacy. In particular, a substantial number of filled prescriptions were left in the pharmacy in cardboard boxes available to employees. And, the Appellant did not maintain inventory of stock at the Pill Box Pharmacy.

The Appellant violated Pharmacy Board Regulation 3.1.2.7 in that, as the PIC, he failed to conduct an annual pharmacy inspection and prepare a PIC report.

The Appellant violated Pharmacy Board Regulation 3.4.4 with respect to the required parameters for refrigeration of drugs. Testimony at the hearing established

3

that there was no evidence of a temperature monitor in the refrigerator nor were any records routinely kept logging refrigerator temperatures.

The Appellant violated Pharmacy Board Regulation 2.1.11 which, in part, precludes the dispensing of "legend" drugs without a valid order from a prescriber. During the inspection, the investigators found a prescription for a controlled substance which was not signed by the prescriber but which was dispensed by the Appellant.

The Appellant violated Pharmacy Board Regulation 2.1.21 in that he engaged in activities that would "discredit the profession of pharmacy." In support of this recommended conclusion, the Hearing Officer pointed to the Appellant's failure to maintain required inventories at the Pill Box Pharmacy for years since he opened it and became PIC in 2006; the Appellant failed to report suspected theft; the Appellant left substantial quantities of filled prescriptions for both controlled and non-controlled substances unattended in cardboard boxes; and, on at least one occasion, the Appellant dispensed a Schedule II controlled substance with an unsigned prescription.

The Appellant practiced pharmacy negligently. In support of this recommendation, the Hearing Officer noted that the Appellant's neglect of record-keeping was a persistent failure over a number of years. The Hearing Officer further noted that the Appellant's testimony about certain personal issues that occupied his time away from the Pill Box Pharmacy did not excuse his substantial regulatory violations.

In light of the foregoing violations, the Hearing Officer determined that a one-year period of suspension of the Appellant's pharmacist license, along with other sanctions, was appropriate.

On August 16, 2017, the Pharmacy Board provided the Appellant an opportunity to present oral exceptions to the Hearing Officer's recommendations (hereinafter, the "Pharmacy Board Hearing"). The Appellant did not dispute the Hearing Officer's findings of fact but asked the Pharmacy Board to consider the personal hardships that he faced in determining appropriate sanctions. Ultimately, the Pharmacy Board accepted the Hearing Officer's recommended conclusions of law. However, the Pharmacy Board rejected the sanctions proposed by the Hearing Officer. Instead, the Pharmacy Board, in addition to numerous other sanctions not listed here, extended the suspension period of the Appellant's pharmacist license from one-year to two-years and imposed a five-year probationary period to follow the suspension.

On September 20, 2017, the Pharmacy Board issued a final order (hereinafter, the "Pharmacy Board's Final Order"). The order memorialized, in writing, the Pharmacy Board's decision to accept the Hearing Officer's recommended conclusions of law and set forth the newly agreed upon sanctions that were discussed during the Pharmacy Board Hearing. The order specified that it declined to accept the Hearing Officer's recommended discipline because it was insufficient to address the "significant risk to the public" presented by the Appellant.

The Appellant appealed the Pharmacy Board's final decision to this Court.

## THE PARTIES CONTENTIONS

The Appellant's only contention is, essentially, that the Pharmacy Board's decision was based upon facts or allegations not previously made against the Appellant or considered by the Hearing Officer.

In response, the Pharmacy Board contends that the Court is not permitted to consider the Pharmacy Board's comments at the Pharmacy Board Hearing. The Court's review, apparently, is confined to the Pharmacy Board's Final Order. And, upon such a review, the Pharmacy Board's decision should be affirmed because the modified sanctions have a substantial and rational basis, are supported by substantial evidence, and are free from legal error.

## STANDARD OF REVIEW

Upon appeal from a decision of the Pharmacy Board, the Court's function "is confined to ensuring that the [Pharmacy] Board made no errors of law and determining whether there is 'substantial evidence' to support the [Pharmacy] Board's factual findings."[2] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] The "substantial evidence" standard requires "more than a scintilla but less than a preponderance of

---

[2] *Bermudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Aug. 16, 2006).

[3] *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998) (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

6

the evidence."[4]

The Court "does not weigh the evidence, determine questions of credibility, or make its own factual findings."[5] These functions are reserved exclusively for the Pharmacy Board.[6] The Court must afford "a significant degree of deference to the [Pharmacy] Board's factual conclusions and its application of those conclusions to the appropriate legal standards."[7] In reviewing the evidence, the Court must consider the record "in the light most favorable to the prevailing party below."[8] The Court reviews questions of law *de novo* "to determine whether the [Pharmacy] Board erred in formulating or applying legal precepts."[9]

In applying the standard of review, the Court must search the *entire record* to determine whether, on the basis of all the testimony and exhibits, the Pharmacy Board could fairly and reasonably reach its conclusions.[10] Where the evidence is sufficient

---

[4] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988) (citing *DiFilippo v. Beck*, 567 F. Supp. 110, 112 (D. Del. 1983)).

[5] *Hall v. Rollins Leasing*, 1996 WL 659476, at *2 (Del. Super. Oct. 4, 1996) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[6] *See Giofre v. G.C. Capital Group*, 1995 WL 264585, at *3 (Del. Super. Apr. 17, 1995), *aff'd*, 670 A.2d 1338 (Del. 1995) (TABLE).

[7] *Bermudez*, 2006 WL 2382793 at *3 (citing 29 *Del. C.* § 10142(d)).

[8] *Id.* (quoting *General Motors Corp. v. Guy*, 1991 WL 190491, at *3 (Del. Super. Aug. 16, 1991)).

[9] *Bermudez*, 2006 WL 2382793 at *3.

[10] *See National Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. Super. 1980).

to support the Pharmacy Board's conclusions, its decision will not be disturbed absent an error of law.[11]

These general standards are guidelines regularly administered by Delaware appellate courts in reviewing various board's decisions, e.g. Industrial Accident Board proceedings. The application of these guidelines, however, is not limited. They have been expanded in application to the decisions and proceedings of other boards and administrative agencies, e.g. Board of Adjustment proceedings;[12] Board of Accountancy proceedings;[13] Delaware Alcoholic Beverage Control Commission proceedings;[14] and Delaware State Board of Examiners in Optometry proceedings.[15] It is with these guidelines in mind that the Court conducts its review of the appeal of the Pharmacy Board's sanctions against the Appellant.

## DISCUSSION

Despite the Appellant and the Pharmacy Board's failure to address 29 *Del. C.* § 8735(v)(1), the Court finds that the claims on appeal require interpretation of it. The General assembly enacted 29 *Del. C.* § 8735(v)(1) to give the Division of Public

---

[11] *See General Motors Corp. v. Freeman*, 164 A.2d 686, 689 (Del. 1960).

[12] *See, e.g., AT&T v. Sussex County Bd. of Adjustment*, 2015 WL 1975629 (Del. Super. Apr. 30, 2015).

[13] *See Estep v. Bd. of Accountancy*, 2012 WL 5432367 (Del. Super. Oct. 2, 2012).

[14] *See Kirpat, Inc. v. Delaware Alcoholic Beverage Control Com'n*, 1998 WL 731577 (Del. Super. Mar. 31, 1998).

[15] *See Warmouth v. Delaware State Bd. of Examiners in Optometry*, 514 A.2d 1119 (Del. Super. 1985).

8

Regulation "the power to retain hearing officers to handle evidentiary hearings and other matters."[16] By its terms, § 8735(v)(1) creates the full-time position of 'Hearing Officer' "[w]ith respect to case decisions arising under Title 29, Chapter 101, subchapter III."[17] The provision confers upon 'Hearing Officers' "[a]ll the powers and duties conferred or imposed upon such officers by law or by the Rules of Procedure for any board or commission under Titles 23, 24 and 28."[18] Title 24 creates regulatory boards for a number of professions, including pharmacists; accordingly, § 8735(v)(1) applies to the Pharmacy Board.[19]

The Hearing Officer's powers under § 8735(v)(1) include the "power to conduct hearings, including any evidentiary hearings."[20] Specifically, § 8735(v)(1)d states:

> The testimony or evidence so taken [by the Hearing Officer] shall have the same force or effect as if taken or received by the board or commission. Upon completion of such hearings or the taking of such testimony and evidence, the hearing officer shall submit to the board or commission findings and recommendations thereon. *The findings of fact made by a hearing officer on a complaint are binding upon the board or commission. The board or commission may not consider additional*

---

[16] *Richardson v. Bd. of Cosmetology and Barbering*, 69 A.3d 353, 356 (Del. 2013) (citation omitted).

[17] 29 *Del. C.* § 8735(v)(1).

[18] 29 *Del. C.* § 8735(v)(1)a.

[19] 24 *Del. C.* § 2501 et seq.

[20] 29 *Del. C.* § 8735(v)(1)d.

*evidence.* When the proposed order is submitted to the board or commission, a copy shall be delivered to each of the other parties, who shall have 20 days to submit written exceptions, comments and arguments concerning the conclusions of law and recommended penalty. The board or commission shall make its final decision to affirm or modify the hearing officer's recommended conclusions of law and proposed sanctions *based upon the written record.*[21]

The Court has emphasized the preceding language because, as contended by the Appellant, it is readily apparent from the transcript of the Pharmacy Board Hearing that the Pharmacy Board considered additional evidence, not included in the written record, when the board modified the Hearing Officer's recommended sanctions against the Appellant. The Court relies upon the following excerpts from the transcript in making this finding:

> [Susan] Esposito:[22] Um, that if I had to produce them – but I would – and the other concern I have is that I did not see anywhere, where he tried to contact the [Pharmacy] Board to ask for assistance in what was needed of recordkeeping or – I mean, if he came here as the PIC, we are pretty good about reviewing what the – what your responsibilities are.
>
> I'm just a little concerned that it took – um, an inspection, to – you know, whatever your personal life was, this is a business, and there's a lot of laws. And they are readily available.
>
> So, I mean – um, as [Pharmacy] Board Members, we get calls from people all the time, asking questions. And we're here to help people,

---

[21] *Id.* (emphasis added).

[22] Susan Esposito, R.Ph. is a member of the Pharmacy Board.

from getting into these types of situations.

So, you know, I'm – I'm a little concerned that – that you didn't reach out for that kind of assistance.

[Eileen] Kelly:[23] *Well, I don't know whether he did or not. That's just not on the record.*[24]

. . .

[Kimberly] Robbins:[25] One of my biggest concerns, in all this, is the 280 prescriptions –

[Hooshang] Shanehsaz:[26] Yes.

Ms. Robbins: – that had not been reversed.

Mr. Shanehsaz: For five years.

Ms. Robbins: That, to me, it's probably any pharmacist, who is working any type of retail claims, should know that you need to reverse these claims.

Mr. Shanehsaz: Mm-hm.

---

[23] Eileen Kelly, Esq. of the Delaware Department of Justice is the Pharmacy Board's counsel. Ms. Kelly advised the Pharmacy Board during the Pharmacy Board Hearing.

[24] Transcript of Pharmacy Board Hearing at 11-12 (emphasis added).

[25] Kimberly Robbins, R.Ph. was a member of the Pharmacy Board at the time of the Pharmacy Board Hearing.

[26] Hooshang Shanehsaz, R.Ph. is the President of the Pharmacy Board.

Ms. Robbins: That's my biggest problem, is the – um, insurance fraud, from that. And, as this moves on, I'm hopeful that this – is this moving on with insurance, the different insurance, um, carriers?

Because, 115 of those, that they found were State Medicaid, of the 280.

Ms. Kelly: *There were no findings against him of insurance fraud. That wasn't part of the case.*

Ms. Robbins: Okay.

Ms. Kelly: It was – it was more like, they weren't reversed. I don't know that there was anything, like, any criminal –

Mr. Shanehsaz: I have to admit, as a pharmacist –

Ms. Robbins: That's my biggest concern.[27]

. . .

[Jay] Galloway:[28] I've – I've known [the Hearing Officer] for years. And so, it – you know, based on his – if that's his recommendation.

Ms. Kelly: *No, no, no*

Mr. Galloway: – I agree with it.

Ms. Kelly: *You can't – No, you can't vouch for –*

_____

[27] *Id.* at 12-14 (emphasis added).

[28] Jay Galloway is a public member of the Pharmacy Board.

Mr. Galloway: No, I – I –

Ms. Kelly: *No, no, no, no.*[29]

. . .

Ms. Robbins: I agree that – I – I tell you, because it's – uh, I'm from the area, where this pharmacy is close to

And, when this appeared – uh, in this, when I started – when I started to read it, I was absolutely shocked. I did not even think anything like that was – um, was apparent in this – in this pharmacy.

And, um, I tell you, I was – I was – um, really, kind of distraught, on the whole thing, that this – this pharmacy – I don't know if you guys realize that, but they came into effect about the time with the Happy Harry's Walgreens buyout.

And a lot of people left, in that area, and went to this independent. And it's taking care of a lot of people in the Milford area.

And I – I don't doubt his – um, his, um, caring and – and taking care of the patients, I don't doubt that. I think things were extremely sloppy, in how things were handled.

Um, but what I would – what I would be interested in knowing, because I know that this pharmacy was very close to Dr. Titus, who had some problems down in Milford.

Ms. Kelly: *No, we can't get into Dr. Titus.*

---

[29] *Id.* at 15 (emphasis added).

Ms. Robbins: Well, I'm just – I – I realize that. I'm just asking, how many Oxycodone's were filled, out of this pharmacy –

Ms. Kelly: *No, no, no, no, no, no.*

Ms. Robbins: We don't – we can't –

Ms. Kelly: *No.*

Ms. Robbins: – find that out –

Ms. Kelly: *No.*

Ms. Robbins: – to – to see –

Ms. Kelly: *Dr. Titus has nothing to do with this.*

Ms. Robbins: Okay.

Ms. Kelly: *It's not part of the case. You can't kind of bring in outsider stuff, because will prejudice Mr. Sekyi.*

Ms. Robbins: Oh, I – I'm just wondering how many prescriptions, if it was a high-volume Oxycodone store or not, where 1500 might be one percent versus ten percent –

Ms. Kelly: Oh, okay.

Ms. Robbins: – of what's coming out of the store.

Ms. Kelly: Mr. –

Ms. Robbins: That's what I was trying to determine.

Ms. Kelly: [The Hearing Officer] *made factual findings, and you're stuck with that.*

Ms. Robbins: Okay

Ms. Kelly: *You can't find anything else out.*[30]

. . .

Ms. Esposito: – um, and it's a precedent. If – if we impose fines on people for not doing continuing education credits, which is –

Ms. Kelly: We have.

Ms. Esposito: – is their licensing, and it's a personal thing, to not get your license renewed – um, and that's doing no harm to anyone but themselves.

I just feel that as – as protectors of the public – um, we have to ensure that – um, people realize that these are regulations that are here for a reason to protect patients.

And, I mean, we're not saying anything to you , as a person. But, I just – after 46 years in the profession, *it just upsets me to think of all the things that could have happened because those records weren't there. Um, maybe patients were getting prescriptions that they shouldn't have been getting and –*

Mr. Shanehsaz: That's – that's it.

Ms. Esposito: – physicians were not notified. And I just – um, I just feel

---

[30] *Id.* at 18-20 (emphasis added).

15

that you did the public a disservice. You may not have intentionally done it.

*But I just feel that this has to be something that we address as seriously as – uh, as the facts.*

Mr. Shanehsaz: I'm – I'm not questioning the lack of –

Ms. Kelly: *Wait. You can't – you shouldn't be addressing the –*

Mr. Shanehsaz: I'm – I'm not questioning Mr. Sekyi's, uh, like you said, uh, personal intent. Because that's not what we're here for.

I don't have facts of, you know – uh, as to what kind of person, that he is, or anything. I'm just looking at the case.

As you were saying, if the record keeping was that, for lack of a better word, sloppy for – from the beginning – we're not even talking about, you know – from the beginning, how many mistakes – 95 percent of mistakes are happening because of the pharmacist is distracted, the pharmacist has other things going on.

So, if they're that distracted, that they can't do a basic thing, PIC Report every year, never done nothing.

*So, how many times, mistakes that have happened, that we can't even follow, because there's no records?*[31]

. . .

Mr. Shanehsaz: . . .

---

[31] *Id.* at 24-6.

> *My concern is what else happened out there that we don't know.*
> *There's a lot — there's a lot of residents that might very well have gotten*
> *wrong medication, somebody else's medication.*[32]

The preceding discussions are not acknowledged in the Pharmacy Board's Final Order. The Court, however, is not precluded from reviewing the transcript simply because a final order exists. Rather, the Court may, as previously set forth, review the *entire record* on appeal to determine whether, on the basis of *all* the testimony and exhibits, the Pharmacy Board could fairly and reasonably reach its conclusions.[33] Therefore, the Pharmacy Board's contention, that the Court must rely exclusively on the final order, is simply wrong. This holds true even if the Court considers the most persuasive precedent cited by the Pharmacy Board in its answering brief. For example, although the Court in *Bethany Beach Volunteer Fire Co. v. Board of Adjustment of Town of Bethany Beach*,[34] stated that "authority suggests that courts should look only to the Board's written decision in its exercise of their review function,"[35] the Court still required that the "entire record be included as the record of the 'proceedings below."[36] This encompassed the transcript of the board's oral

---

[32] *Id.* at 28.

[33] *National Cash Register v. Riner*, 424 A.2d at 674-75.

[34] *Bethany Beach Volunteer Fire Co. v. Bd. of Adjustment of Town of Bethany Beach*, 1998 WL 110057 (Del. Super. Jan. 23, 1998).

[35] *Id.* at *3.

[36] *Id.* at *4.

deliberations regarding the merits of the petitioner's application for a special exception to construct and to operate a fire house as a public service building in the area of Bethany Beach, Delaware that was classified as R-2.[37] The Court's decision was based upon a finding that "the public would expect a review of the entire proceeding and [the Court's] decision that some public comments might form the basis to attack [the Board's] written decision."[38] Furthermore, although the Court of Chancery in *Delaware Correctional Officers Ass'n v. State*,[39] stated that, "[a] subsequent written decision would, of course, serve no useful purpose if it merely parroted the words spoken by Board members at the public meeting,"[40] this Court notes the statement is merely *dicta*. Morever, this Court is not bound by Chancery decisions.

Having determined that it was permissible to review the Pharmacy Board Hearing transcript, the Court turns back to the quoted excerpts. The Court included the excerpts and *italicized* certain portions of them, as the Court believes the quoted and *italicized* portions of the transcript constitute the crux of the Pharmacy Board's violation of § 8735(v)(1). The board members may not consider additional evidence

---

[37] *Id.* at *1, 4.

[38] *Id.* at *4.

[39] *Delaware Correctional Officers Ass'n v. State*, 2003 WL 23021927 (Del. Ch. Dec. 18, 2003).

[40] *Id.* at *8.

outside of the Hearing Officer's finding of fact.[41] Yet, the Pharmacy Board members clearly did. And, there is no indication that Ms. Kelly's frequent admonishments had any actual effect, especially since the board members continued to raise matters outside the record.[42] Consequently, the Court finds that the Pharmacy Board violated the prohibitions set forth in § 8735(v)(1)d.[43]

## CONCLUSION

In sum, the Pharmacy Board's decision to modify the Hearing Officer's recommended sanctions is hereby **REVERSED** and **REMANDED**, for the board considered additional evidence in violation of 29 *Del. C.* § 8735(v)(1). On remand, the Pharmacy Board must be careful to base its decision only upon the written record.

**IT IS SO ORDERED.**

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[41] 29 *Del. C.* § 8735(v)(1)d.

[42] The Court commends Ms. Kelly for her attempt to reign in the Pharmacy Board members. The focus of this decision is not on her conduct but that of the Pharmacy Board.

[43] Even if § 8735(v)(1) did not exist, the Pharmacy Board's consideration of outside evidence still requires reversal according to Delaware precedent. *See Turbitt v. Blue Hen Lines, Inc.*, 711 A.2d 1214, 1216 (Del. 1998) (where the Delaware Supreme Court emphasized that "it is improper for an administrative agency to base a decision on information outside of the record without notice to the parties"); *Trader v. Caulk*, 1992 WL 148094, at *2 (Del. Super. Jun. 10, 1992) (where this Court emphasized that "[i]t is a general rule of law that it is improper for an administrative agency to base a decision, or findings in support thereof, on evidence or information outside the record," because "[g]enerally, the use of such information or evidence constitutes a due process violation").