**NATIONAL CASH REGISTER,**
Appellant,

v.

**Gordon E. RINER, Appellee.**

Superior Court of Delaware,
Sussex County.

Submitted Sept. 11, 1980.
Decided Sept. 18, 1980.

David A. Copus and Donald R. Crowell, II, of Pepper, Hamilton & Scheetz, Washington, D. C., and David H. Williams, of Morris, James, Hitchens & Williams, Wilmington, for appellant.

Michael J. Rich, of Dunlap, Holland & Rich, Georgetown, for appellee.

OPINION

TEASE, Judge.

In this appeal from the Equal Employment Review Board of the State Department of Labor, the Court is asked to review a finding of age discrimination on the part of appellant National Cash Register (NCR) pursuant to a complaint filed by Gordon E. Riner under 19 *Del.C.* § 710 *et seq.*

The recent financial problems of NCR are well known in this State. In the past decade the company has experienced its share of difficulties, most of economic origin. The Millsboro plant, originally designed to produce mechanical cash registers, fell victim of the technological advances of the computer age. Although the last mechanical register was produced in 1975, the changeover process left NCR with losses approaching $10 million between 1974 and 1976.

Faced with declining production and the inevitable financial losses, NCR undertook to drastically curtail its operations, in large part by reducing personnel. From a peak of about 2200 in the early 1970's, employment fell to approximately 450 by September, 1976. Riner was among those discharged during that period.

Following his termination Riner filed an individual complaint against NCR before the Board as required by the federal Age Discrimination in Employment Act (ADEA), 29 *U.S.C.* § 621 *et seq.* After an investigation by the Delaware Anti-Discrimination Section, Riner's case was heard on April 21, 1978. At the conclusion of that hearing, the Board found that NCR had discriminated against Riner because of his age when he was discharged after 34 years of employment with the company.

The federal Age Discrimination in Employment Act of 1967, 29 *U.S.C.* § 621 *et seq.*, upon which the Delaware Discrimination in Employment Act, 19 *Del.C.* § 710 *et seq.*, is based, has as its stated purpose "... to promote employment of older persons based on their ability rather than age ..." 29 *U.S.C.* § 621(b). The Act was designed to attack those employers' personnel policies and practices which arbitrarily classified employees or potential employees on the basis of age, and did not seek to affect employer decisions based on individual assessments of a person's abilities, capabilities, and potential. Not every personnel decision by an employer which results in different treatment of individuals in the protected class is a violation of the Act. Certain policies and practices not contrary to the general purpose are permitted. *Mastie v. Great Lakes Steel Corporation,* E.D.Mich., 424 F.Supp. 1299 (1976).

■ While the principal thrust of the ADEA is to protect the older worker from victimization by arbitrary classification on account of age, it was not the intent of Congress to have automatic presumptions apply whenever a worker is replaced by another of a different age. *Laugesen v. Anaconda Company,* 6th Cir., 510 F.2d 307 (1975).

■ The federal courts are in agreement that the central issue in a case arising under the ADEA is whether the employee was discharged because of his age. The plaintiff employee must first proceed to establish a prima facie case of discrimination. The burden of production (though not the burden of persuasion) then shifts to the defendant employer to articulate some non-discriminatory reason for the employee's discharge. The employee must then show that that reason is a mere pretext designed to cover a discriminatory motive and that, in fact, age was the deciding factor. See *Loeb v. Textron, Inc.,* 1st Cir., 600 F.2d 1003 (1979); *Olsen v. Southern Pacific Transportation Company,* N.D.Cal., 480 F.Supp. 773 (1979).

■ Thus the burden on the employer is merely to rebut the inference of discrimination that arises from proof of a prima facie case, and proof of a prima facie case is not equivalent to a factual finding of discrimination. The plaintiff can only prevail, as in all civil actions, by proving discrimination by a preponderance of the evidence. *Loeb v. Textron, Inc., supra; Mastie v. Great Lakes Steel Corporation, supra.*

The requirements of the prima facie case were introduced in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although that case arose in the context of Title VII of the 1964 Civil Rights Act, its test for proof of a prima facie case in a discrimination action generally has been approved by numerous federal courts. See generally *Loeb v. Textron, Inc., supra; Olsen v. Southern Pacific Transportation Company, supra.* It has also been approved by our Supreme Court in *Giles v. The Family Court,* Del.Supr., No. 227 (1979) for use in cases arising under 19 *Del.C.* § 711.

> The method suggested in *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978).

■ The *McDonnell Douglas* test, then, as applied to an age discrimination action, may be expressed as requiring proof of the following facts:

(1) that the plaintiff was within the protected age group,[1]

(2) that the plaintiff was qualified for the position in question,

(3) that the plaintiff was discharged,

(4) that the plaintiff was replaced by a younger person or a person outside the protected age group.

---

1. Under both federal and state law the protected age group is 40–70, inclusive. See 19 *Del.C.* § 710(7); Pub.L. No. 95–256, § 3(a) 92 Stat. 189 (amending 29 *U.S.C.* § 631).

■ As to the requirement that the employee show that he was qualified for the position from which he was dismissed, he must show that he was doing well enough to rule out the possibility that he was fired for inadequate job performance, absolute or *relative*. *Loeb v. Textron, Inc., supra; International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). And, the fact that the position was eliminated after the employee's discharge, or that plaintiff's replacement was also a member of the protected class, will not operate to defeat plaintiff's prima facie showing if he can otherwise infer discrimination. *Moore v. Sears, Roebuck and Co.*, N.D.Ga., 464 F.Supp. 357 (1979).

> From *McDonnell Douglas* and *Furnco*, we perceive that the notion of a prima facie case in a discrimination action is a fluid one. Because the principle essentially embodies a rule of common sense, corresponding to the inferences that will ordinarily be drawn from a particular set of circumstances, we see no reason to hold that it can or must be expressed by a single formula. The prima facie showing is that which "in the light of common experience," *Furnco*, 98 S.Ct. at 2949, raises the inference that an employment decision was probably based on an impermissible factor. That showing will necessarily vary from case to case. *Moore v. Sears, Roebuck and Co., supra.*

■ From the record, it is clear that Riner was a member of the protected class, that he was fired from a job for which he was qualified (T81; Hearing Exhibit A–5), and that the work he had been performing was assumed by employees not within the protected class, including fellow engineers Frazee and Kodnovich (T188–190, 243). Riner therefore made out a prima facie case of age discrimination under the *McDonnell Douglas* test.

■ But it seems equally clear from the record that NCR produced evidence sufficient to rebut the plaintiff's inference of discrimination. Faced with declining production and massive losses during the 1974– 1976 period, NCR undertook to drastically curtail the cost of operations, in large part by reducing personnel (T74, 84, 87, 150– 154). It is undisputed that employment at the Millsboro facility dropped from a peak of approximately 2200 in 1974 (T150) to a mere 450 when Riner was dismissed (T152– 153). Moreover NCR undertook an elaborate analysis of company needs (Overhead Value Analysis; T86–87, 148–149), which included a detailed evaluation of employee performance, in order to determine which employees would remain with NCR and which would be terminated. That evaluation revealed that Riner, though qualified, was not as qualified as either of his co-workers (T216; Hearing Exhibits B–4 and B–6).

Under the case law, then, it was incumbent upon the plaintiff to show that the defendant's reasons for discharging him were a mere pretext for a discriminatory motive. In that, the plaintiff failed.

■ An employee is entitled to exercise his sound business judgment, and may fire even an adequate employee, if the reason is to hire a new employee (or, presumably, to have existing personnel undertake a discharged employee's tasks) as long as it is not a pretext for discrimination. *Loeb v. Textron, Inc., supra.*

> In [the Act], to be sure, Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence. *Loeb v. Textron, Inc.*, 600 F.2d at 1016.

■ The ADEA does not require that advanced age and substantial length of service entitle employees to special favorable consideration; it requires merely that an employee within the protected age group not be the subject of discrimination because of his or her age. *Cova v. Coca-Cola Bottling Co. of St. Louis*, 8th Cir., 574 F.2d 958 (1978). Thus the Act provides for the discharging of employees within the protected class for "good cause," 29 *U.S.C.* § 623(f)(3), or for factors other than age. 29 *U.S.C.* § 623(f)(1).

■ Moreover, it is not enough for an employee to show that age merely entered into consideration (such as where an employee's age makes the employer more certain of his decision to discharge). *Olsen v. Southern Pacific Transportation Company, supra.* Age must be a "determining" factor in an employer's personnel practices before a violation of the ADEA occurs, *Laugeson v. Anaconda Company, supra;* 29 C.F.R. § 860, 103(c), and a finding that age was "a" factor is not equivalent to a finding that age was the "determinative" factor. *Loeb v. Textron, Inc., supra.* Here, although age may have been "a" hidden factor in NCR's decision to discharge Riner, it is more apparent that NCR, in endeavoring to pare down its work force, *dismissed him in the belief that his abilities were inferior to those of others.*

Other courts have held that an employer can satisfy its burden of objectivity in terminating employees following a reduction in operations by establishing that it conducted and relied on a thorough evaluation process of the employees affected. See *Gill v. Union Carbide Corp.,* E.D.Tenn., 368 F.Supp. 364 (1973); *Stringfellow v. Monsanto Co.,* W.D.Ark., 320 F.Supp. 1175 (1970). In both *Gill* and *Stringfellow,* termination of same employees was required following economic difficulties.

In *Mastie v. Great Lakes Steel Corporation, supra,* the curtailment of operations at a steel mill and its concomitant personnel evaluation resulted in a judgment on the part of management that the plaintiffs had the least ability and potential relative to other employees. The Court noted in that case that "It is irrelevant in the court's view whether or not [the plaintiff] was an above average employee if the defendant can establish that employees who were retained by the defendant were superior." 424 F.Supp. at 1310.

In *Stringfellow v. Monsanto Company, supra,* the defendant claimed that economic factors required a substantial reduction of the facility and the elimination of a large number of employees. There the Court ruled that "I do not think that Congress intended to invade the prerogative of the company in its differentiation of personnel under the facts presented in this record." 320 F.Supp. at 1175.

Finally in *Laugesen v. Anaconda Company, supra,* after industry-wide economic difficulties resulted in the discharge of a large number of employees, Anaconda raised as a defense "a need to reduce personnel generally, together with proof that the selection of the individual plaintiff for discharge was based upon the relative merits of two men for the one position which remained." 510 F.2d at 313. The *Laugesen* Court found the plaintiff unable to provide any evidence which directly indicated a policy or intention of using age as a factor in the process of selecting those employees who would be terminated and those who would remain. So, too, is the record in this case barren of any such evidence.

The court is not unsympathetic to the plight of the older worker in today's rapidly developing economy. However, the ADEA was never intended as an all encompassing cure for the employment ills of the nation's aged population. To the extent that the Age Act does not reach sufficiently the important and significant problems faced by the aged, further Congressional action in this area may be desirable. However, it is not this or any other court's duty or function to distort the intention and meaning of a Congressional statute, albeit one broadly denominated as remedial civil rights legislation. *Mastie v. Great Lakes Steel Corp.,* 424 F.Supp. at 1322.

I adopt that language as a relevant footnote to this rather unfortunate result.

■ In Delaware, if the record discloses substantial evidence to support a decision of the Equal Employment Review Board, the Superior Court must affirm. *News-Journal Company v. Connell,* Del.Super., 328 A.2d 150 (1974); *Giles v. The Family Court,* Del.Supr., 411 A.2d 599 (1979). The "substantial evidence" standard of review of decisions from administrative agencies requires the reviewing court to search the entire record to determine whether, on

the basis of all of the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did. *Winship v. Brewer School Committee*, Me. Supr., 390 A.2d 1089 (1978). In reviewing the record below, and in analyzing the cases and arguments advanced by counsel, it is clear that the Board could not reasonably have reached the conclusion that it did. Plaintiff has failed to prove his allegations of age discrimination by a preponderance of the evidence, and the decision of the Board was not supported by substantial evidence.

Reversed.