# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHEILA P. TUCKER, | : | **C.A. No. K19A-04-005 NEP** |
| | : | **In and for Kent County** |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| DELAWARE BOARD OF | : | |
| PHARMACY, | : | |
| Appellee. | : | |

## ORDER

Submitted: September 4, 2019
Decided: November 27, 2019

***Upon Appeal from the Delaware Board of Pharmacy***
**AFFIRMED**

Ciro Poppiti, III, Esquire, Poppiti Law, LLC, *Attorney for Appellant Sheila P. Tucker.*

Eileen Kelly, Esquire, Department of Justice, *Attorney for Appellee Delaware Board of Pharmacy.*

Before the Court is Sheila Tucker's (hereinafter "Ms. Tucker") appeal from the Delaware Board of Pharmacy's (hereinafter the "Board") decision to suspend her pharmacy license for one year, followed by a three-year license probation. Upon an extensive review of the record, this Court has determined that the Board had a substantial basis for its decision and made no errors of law in reaching its conclusions. Therefore, the Board's decision is **AFFIRMED.**

## I.  Factual Background and Procedural History

Ms. Tucker has been a licensed pharmacist for the past thirty-six years, with no prior discipline from the Board.  Ms. Tucker has served as President of the Delaware Pharmacists Society and has been active in the Delaware Society of Health System Pharmacists.  In 2003, Ms. Tucker opened Market Street Pharmacy (hereinafter the "Pharmacy") in Wilmington, Delaware, as part of her commitment to serve underserved communities.  Ms. Tucker owned and operated the Pharmacy as its pharmacist-in-charge, and leased the building from McConnell Development, Inc.

Over time, the Pharmacy began to decline.  On or about July 29, 2016, Respondent informed the Division of Professional Regulation (hereinafter the "DPR") that she planned to close the Pharmacy by August 8, 2016.  On August 1, 2016, the DPR sent a letter to Ms. Tucker providing the legal requirements for closure of a pharmacy under Board of Pharmacy Regulation 4.0.

Ms. Tucker retained closure documents, controlled substances, and patient records in the building as she worked to close down the Pharmacy.  McConnell Development terminated Ms. Tucker's lease on the property on October 31, 2016.  At some point between the closure of the Pharmacy and October 2016, Ms. Tucker lost custody of the patient records and controlled substances.  Ms. Tucker failed to inform the Board, the Office of Controlled Substances, or the Drug Enforcement Administration that this had occurred.

On or about August 7, 2018, the State of Delaware filed a professional licensure complaint against Ms. Tucker with the Board.  In response, Ms. Tucker stipulated with the State that she had "violated each of the statutory and regulatory provisions cited in the State's complaint."[1]

---

[1] App. to Ms. Tucker's Opening Br. at A-18.

On November 30, 2018, Hearing Officer Roger Akin (hereinafter the "Hearing Officer") held a hearing on the State's complaint. The Hearing Officer accepted the stipulated facts and reviewed mitigating evidence from the following individuals: (1) Ms. Tucker; (2) Mr. John Simpson, Ms. Tucker's former employee and mentee; (3) Senator Margaret Henry, a former state senator; (4) Mr. Christopher Cook, Vice President of Greenhill Pharmacy; (5) Ms. Margaret Tigue, a community activist; and (6) Mr. Kevin Smith, CEO for Habitat for Humanity, New Castle County. The mitigating testimony spoke to Ms. Tucker's reputation in the community and in the pharmaceutical profession. To summarize the mitigating evidence, the Hearing Officer stated that "there [was] no evidence . . . of any intent on [Ms. Tucker's] part to cause harm" and that Ms. Tucker had "demonstrated a credible desire to serve the pharmacy needs of underserved, at-risk patients in [Delaware]."[2]

On January 9, 2019, the Hearing Officer recommended the following conclusions of law based upon his factual findings:

(1) Ms. Tucker had violated 24 *Del. C.* § 2515(a)(6)[3] by violating Bd. Reg. 4.1.2 (providing that upon permanent closure of pharmacy, certain information must be provided to Executive Secretary of Board of Pharmacy within seven days of closure).

(2) Ms. Tucker had violated 24 *Del. C.* § 2515(a)(6) by violating Bd. Reg. 4.1.3 (providing that upon permanent closure of pharmacy, person in control of pharmacy must provide newspaper notification of such closure, including date of closure and to which pharmacy prescriptions will be transferred).

---

[2] *Id.* at A-27.
[3] "A pharmacist licensed under this chapter is subject to disciplinary sanctions set forth in § 2516 of this title if, after a hearing, the Board finds that the pharmacist . . . . [h]as violated a lawful provision of this chapter or any lawful regulation established hereunder."

(3) Ms. Tucker had violated 24 *Del. C.* § 2515(a)(6) by violating Bd. Reg. 4.1.4 (providing that upon permanent closure of pharmacy, person in control of pharmacy must surrender to appropriate authorities his or her pharmacy permit, controlled substances permit, federal controlled substances permit, and all unused 222 Schedule II order forms).

(4) Ms. Tucker had violated 24 *Del. C.* § 2515(a)(6) by violating Delaware Uniform Controlled Substances Act Regulation (hereinafter "UCSR") 6.1.2 (providing that those who prescribe or dispense controlled substances must maintain certain records, including name and address of patients to whom prescriptions are administered; dates, names, strengths, and quantity of prescriptions; and whether refills are authorized).

(5) Ms. Tucker had violated 24 *Del. C.* § 2515(a)(6) by violating UCSR 6.1.3 (providing that dispensing pharmacist must maintain records concerning controlled substances according to applicable federal regulations).

(6) Ms. Tucker had not violated UCSR 6.3.1 (providing that when pharmacist-in-charge leaves position, complete inventory of all controlled substances must be taken by departing pharmacist and arriving pharmacist) since there was no "arriving" pharmacist in this case.

(7) Ms. Tucker had violated 24 *Del. C.* § 2515(a)(6) by violating UCSR 6.3.2 (providing that pharmacist closing practice must notify Office of Controlled Substances within thirty days of such decision, and provide Office with inventory of controlled substances "on hand").

(8) Ms. Tucker had violated 24 *Del. C.* § 2515(a)(6) by violating UCSR 6.4 (providing that pharmacist must retain all records "required by" Uniform Controlled Substances rules for at least two years).

4

(9) Ms. Tucker had violated 24 *Del. C.* § 2515(a)(2).[4]

The Hearing Officer recommended a two-year suspension of Ms. Tucker's pharmacy license, stayed immediately in lieu of a three-year license probation. The Hearing Officer recommended that Ms. Tucker be subject to various requirements as part of this probation.

On February 20, 2019, the Board held a hearing on Ms. Tucker's case and voted unanimously to accept the Hearing Officer's conclusions of law. However, the Board rejected the Hearing Officer's discipline recommendation and instead imposed a license suspension for one year, followed by a three-year period of probation. The Board issued its final order on March 20, 2019. Ms. Tucker filed a timely Notice of Appeal on April 17, 2019, challenging the discipline ordered by the Board.

## II. Standard of Review

On appeal from an administrative board's final order, the appellate court must determine whether the board's decision was supported by "substantial evidence"[5] and that the board "made no errors of law."[6] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[7]

The appellate court must review the record in a manner "most favorable to the prevailing party below."[8] The appellate court does not weigh the evidence or make its own factual findings – rather, it determines if the evidence was adequate to

---

[4] "A pharmacist licensed under this chapter is subject to disciplinary sanctions set forth in § 2516 of this title if, after a hearing, the Board finds that the pharmacist . . . . [h]as illegally, incompetently, or negligently practiced pharmacy."

[5] 29 *Del. C.* § 10142(d); *Tri-State Liquor Mart, Ltd. v. Delaware Alcoholic Beverage Control Comm'n*, 1995 WL 656872, at *2 (Del. Super. Oct. 2, 1995); *Sekyi v. Delaware Board of Pharmacy*, 2018 WL 4177544, at *3 (Del. Super. Aug. 29, 2018).

[6] *Sekyi*, 2018 WL 4177544, at *3.

[7] *Id.* (quoting *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998)).

[8] *Id.* (quoting *Bermudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Aug. 16, 2006); *Gaskill v. State*, 2018 WL 3213782, at *1 (Del. Super. June 29, 2018).

support the board's factual findings.[9] As part of this process, the appellate court must review the record to determine whether the administrative board could have "fairly and reasonably" reached its conclusions.[10] The party challenging the board's decision bears the burden of proof.[11]

### III.  Discussion

Ms. Tucker challenges the Board's final order, arguing that it: (1) failed to rely on substantial evidence, demonstrated by the fact that it did not address a key portion of the Hearing Officer's findings of fact; and (2) contains an error of law because it imposed a higher level of discipline than what the Hearing Officer had recommended.

Under 29 *Del. C.* § 8735(v)(1)d, "[t]he findings of fact made by a hearing officer on a complaint are binding upon the board . . . . [and] [t]he board shall make its final decision to affirm or modify the hearing officer's recommended conclusions of law and proposed sanctions based upon the written record." The board must make its decision based upon the *entire* factual record,[12] but there is no statutory requirement that the Board discuss each portion of the Hearing Officer's findings of fact in its deliberations.

During the hearing, the Board failed to discuss Ms. Tucker's written statement, Mr. Simpson's testimony, Senator Henry's email, Mr. Cook's letter, Ms. Tigue's email, and Mr. Smith's email. The Board also failed to mention this evidence in its final order. Ms. Tucker argues that these failures demonstrate that the Board failed to review the entire record and therefore that the Board's decision

---

[9] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[10] *Sekyi*, 2018 WL 4177544, at *3 (citing *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. Super. 1980)).

[11] *Gaskill*, 2018 WL 3213782, at *1 (citing *Dep't of Justice v. Unemployment Ins. Appeal Bd.*, 2016 WL 3742158, at *4 (Del. Super. July 6, 2016)).

[12] 29 *Del. C.* § 10128(a) ("The agency shall make its decision based on the entire record of the case upon the summaries and recommendations of its subordinates.").

was not supported by substantial evidence. This argument is unpersuasive because it is grounded in a misrepresentation of the law. The Board was required to accept the Hearing Officer's findings of fact, and base its decision on said facts, but it was not required to discuss or write about the entire factual record.

Moreover, the Board's deliberations demonstrate that its decision was based on substantial evidence and that the five Board members present were familiar with the record and the Hearing Officer's Recommendation, which included his findings of fact. Board members Tejal Patel and Jay Galloway each stated that they had read the Recommendation.[13] Board members Hooshang Shanehsaz, Susan Esposito, and Bonnie Wallner made comments demonstrating their familiarity with the facts and circumstances of the case, thereby indicating that they too had read the Recommendation.[14]

Furthermore, Eileen Kelly, Esquire's (hereinafter "Ms. Kelly"),[15] question of "[h]ave the Board members had a chance to look at [the Hearing Officer's report]?" appeared to be posed to the entire Board, to which the Board President, presumptively the spokeswoman of the group, replied "yes."[16] Therefore, giving appropriate deference to the prevailing party below,[17] one can reasonably conclude that the entire Board had read the Recommendation.

Ms. Tucker also argues that the Board's failure to correct Ms. Kelly's "misstatement of the evidence" demonstrated that it had not read the Hearing Officer's Recommendation in its entirety. During the hearing, Ms. Kelly told the Board that Ms. Tucker "had a couple of character witnesses, one testified through letters."[18]

---

[13] App. to Ms. Tucker's Opening Br. at A-31, A-42.
[14] *Id.* at A-37, A-39, A-44.
[15] Ms. Kelly was the Board's attorney at the time of the hearing.
[16] App. to Ms. Tucker's Opening Br. at A-31.
[17] *Sekyi*, 2018 WL 4177544, at *3.
[18] App. to Ms. Tucker's Opening Br. at A-32.

First, Ms. Kelly's statement, while not exact, is substantially correct. Ms. Tucker did indeed have multiple character witnesses, one who spoke at the hearing – Mr. Simpson; three who submitted emails for review at the hearing – Senator Henry, Ms. Tigue, and Mr. Smith; and one who "testified through letters" – Mr. Cook.

Second, assuming *arguendo* that this statement was incorrect, in the context of the hearing it logically follows that the Board would choose not to correct such a minor point. The Board may have found this statement not worth correcting because it was unrelated to their main concern, which was that Ms. Tucker had negligently committed multiple violations, despite the fact that she had practiced pharmacy for thirty-six years and "knew or should have known" what was required of her.[19]

Finally, the Court holds that the Board did not make an error of law when it imposed greater discipline than what the Hearing Officer had recommended. The Board has full discretion to impose the penalty that it deems appropriate and is not bound to follow the hearing officer's recommendation.[20] Here, the Hearing Officer "acknowledged the statutory guidelines for each violation,"[21] which range from a letter of reprimand to the licensee to a complete revocation of the licensee's license.[22] The Hearing Officer recommended a penalty within this range, and although the Board modified that recommendation, it nevertheless imposed discipline that was

---

[19] *Id.* at A-5.
[20] 29 *Del. C.* § 8735(v)(1)d ("[t]he board or commission shall make its decision to affirm or modify the hearing officer's . . . proposed sanctions."); *see Centers v. Delaware Bd. of Med. Licensure and Discipline*, 2017 WL 2558266, at *3 (Del. Super. June 12, 2017) (affirming board's decision to increase discipline from that imposed by the hearing officer); *see also Sheck v. Bd. of Educ. of Colonial Sch. Dist.*, 1983 WL 409633, at *1 (Del. Super. Feb. 10, 1983) (affirming board's decision to reject hearing officer's recommendation for license suspension and terminate license instead).
[21] *Centers*, 2017 WL 2558266, at *4.
[22] 24 *Del. C.* § 2516(a)(1-6); *see Centers*, 2017 WL 2558266, at *4 (court presenting range of penalties available under statute and holding hearing officer imposed discipline within statutorily-authorized range).

"within the guidelines."[23] Moreover, the Board explained in its written decision its reasons for imposing greater discipline than that recommended by the Hearing Officer, concluding that the Hearing Officer's recommended discipline was "insufficient to address the risk to the public presented by Ms. Tucker."[24] Therefore, "the discipline imposed upon Ms. Tucker will not be disturbed,"[25] and it is irrelevant that the parties agreed to different discipline than that ultimately imposed by the Board.

## IV. Conclusion

The Board must base its decision on the entire factual record. However, it is not required to discuss or mention every fact within the Hearing Officer's report. Further, the Board is not bound by a Hearing Officer's recommended discipline.

Here, the Board's decision was based on substantial evidence from the entire record and contained no error of law. Therefore, the decision is affirmed.

**WHEREFORE**, for the forgoing reasons, the decision of the Board of Pharmacy is **AFFIRMED**.

**IT IS SO ORDERED.**

_____/s/ Noel Eason Primos_____
Judge


NEP/wjs
*Sent via File & ServeXpress*
oc:    Prothonotary
       Counsel of Record

---

[23] *Centers*, 2017 WL 2558266, at *4.
[24] App. to Ms. Tucker's Opening Br. at A-5.
[25] *Centers*, 2017 WL 2558266, at *4.