# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELAWARE TECHNICAL AND )
COMMUNITY COLLEGE, )
                                )
                                )   C.A. No. K19A-06-001 NEP
            Appellant,          )   In and for Kent County
                                )
    v.                          )   APPEAL FROM:
                                )   Decision and Final Order of the
PHILLIP BINNS and UNEMPLOYMENT  )   Unemployment Insurance
INSURANCE APPEAL BOARD,         )   Appeal Board
                                )   Dated: 5/23/2019
            Appellees.          )
                                )

Submitted: February 27, 2020
Decided: March 10, 2020

## MEMORANDUM OPINION AND ORDER

Upon Appellant's Appeal from the Decision of the Unemployment Insurance
Appeal Board
**AFFIRMED**

Elizabeth O. Groller, Esquire, *Attorney for Appellant Delaware Technical and Community College.*

Gary W. Aber, Esquire, Gary W. Aber, P.A., *Attorney for Appellee Phillip Binns.*

**Primos, J.**

Before the Court is the appeal of Delaware Technical and Community College (hereinafter "DTCC") from the decision of the Unemployment Insurance Appeal Board (hereinafter the "Board") that Appellee Phillip Binns (hereinafter "Binns") is qualified to receive unemployment benefits. Upon review of the record, this Court has determined that the Board's decision was supported by substantial evidence and that the Board made no errors of law in reaching its conclusions. Therefore, the Board's decision is **AFFIRMED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2015, Binns, a retired police officer,[1] obtained employment as a constable with DTCC's Public Safety Office. As a constable, Binns's primary responsibilities were to protect the lives and property of DTCC's students, faculty, staff, and visitors, and to provide emergency services as a first responder.

On November 12, 2018, one of DTCC's class instructors (hereinafter the "Instructor") found a note (hereinafter the "Note")[2] in a parking lot at DTCC's Stanton Campus. The Instructor put the Note in his pocket, taught a class, and drove home.[3] After the Instructor arrived home, he remembered that the Note was in his pocket, drove back to campus, and gave it to two DTCC security officials.

That evening, Binns arrived to relieve fellow constable Ray Sharp (hereinafter "Sharp") from duty at the front desk. Before Sharp left his post, he gave the Note to Binns.[4] Binns read the Note several times and concluded that although the Note was

---

[1] Binns served with the Philadelphia Police Department for twenty-four years.

[2] The Note is a two-page, handwritten document.

[3] The Record before the Board indicates that the Instructor found the Note, taught a class, drove home, and then returned to campus and turned in the Note to campus security. R. at 227:1-10. However, the Board's written decision states that the Instructor was *leaving class*, found the Note, put it in his pocket, drove home, remembered that he had the Note, and then drove back to campus and gave the Note to campus security. Bd. Order at 5 (R. at 267). This discrepancy is irrelevant to the Court's decision.

[4] Sharp informed Binns that he had not read the Note. Sharp's employment was terminated for the same reason as was Binns's.

2

difficult to read, the Note "could [have] been a cry for help."[5] Over the next thirty minutes, Public Safety Manager Ben Nofasky (hereinafter "Nofasky"), Binns's immediate supervisor that evening, walked past Binns three times and spoke with him at least twice. During that time frame, Binns did not show the Note to anyone, including Nofasky.

Approximately thirty minutes after Binns received the Note, Constable Gerald Gary (hereinafter "Gary")[6] came to the front desk, where Binns was on duty. Binns showed the Note to Gary, who promptly disclosed the Note to Nofasky. DTCC subsequently terminated Binns's employment on the grounds that he should have promptly notified his supervisor of the Note's existence, or sought guidance on how to proceed immediately after reading it.

On December 2, 2018, Binns filed for unemployment insurance benefits with the Delaware Department of Labor. On January 30, 2019, a Department of Labor Claims Deputy found that Binns was eligible for benefits.

On February 8, 2019, DTCC appealed the Claims Deputy's decision to the Appeals Referee (hereinafter the "Referee"), who held a hearing on March 5, 2019, and issued a written decision on March 6, 2019. The Referee affirmed the Claims Deputy's decision, holding that Binns was not disqualified from the receipt of unemployment insurance benefits because he was not terminated from employment for just cause.

On March 14, 2019, DTCC appealed the Referee's decision to the Board, which held a hearing on April 24, 2019, and subsequently issued a written decision on May 23, 2019. The Board affirmed the Referee's decision.

On June 10, 2019, DTCC filed a timely Notice of Appeal to this Court.

---

[5] R. at 132:17-21.

[6] At the time of the incidents in question, Gary had thirteen years of experience as a constable for DTCC, but he was not Binns's superior.

## II. STANDARD OF REVIEW

On appeal from an administrative board's final order, the appellate court must determine whether the board's findings are supported by substantial evidence and are "free from legal error."[7] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[8] If the administrative board's decision is free from legal error and supported by substantial evidence, it must be affirmed.[9]

The appellate court must review the record in a manner "most favorable to the prevailing party below."[10] The appellate court does not weigh the evidence or make its own factual findings – rather, it determines if the evidence was adequate to support the administrative board's factual findings.[11] Upon review of the factual determinations of an administrative board, this Court shall "take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted."[12] As part of this process, the appellate court must review the record to determine whether the board could have "fairly and reasonably" reached its conclusions.[13] The party challenging the board's decision bears the burden of proof.[14] Additionally, questions of law are reviewed *de novo*.[15]

---

[7] *Optima Cleaning Sys. v. Unemployment Ins. Appeal Bd.*, 2010 WL 5307981, at *2 (Del. Super. Dec. 7, 2010).

[8] *Id.* (citing *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993) (internal quotations omitted)).

[9] *Motiva Enter. v. Sec'y of Dept. of Nat. Res. & Envtl. Control*, 745 A.2d 234, 242 (Del. Super. 1999).

[10] *Bermudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Aug. 16, 2006); *Gaskill v. State*, 2018 WL 3213782, at *1 (Del. Super. June 29, 2018).

[11] *Optima Cleaning Sys.*, 2010 WL 5307981, at *2 (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[12] 29 *Del. C.* § 10142(d).

[13] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. Super. 1980).

[14] *Gaskill*, 2018 WL 3213782, at *1 (citing *Dep't of Justice v. Unemployment Ins. Appeal Bd.*, 2016 WL 3742158, at *4 (Del. Super. July 6, 2016)).

[15] *Person-Gaines v. Pepco Holdings*, 981 A.2d 1159, 1161 (Del. 2009).

## III.  DISCUSSION

"[T]he Unemployment Compensation Act is usually given a liberal construction favoring a claimant, at least when its basic policy is in issue."[16] Pursuant to 19 *Del. C.* § 3314(2), a claimant is not eligible for unemployment benefits when he is terminated for "just cause."[17] The employer bears the burden of proving, by a preponderance of the evidence, that it terminated the employee from employment for just cause.[18] "Just cause" is defined as a "willful or wanton act in violation of either the employer's interest, or of the employee's duties, or of the employee's standard of conduct."[19] Willful conduct is conduct that implies "actual, specific, or evil intent."[20] Wanton conduct is conduct that is "heedless, malicious, or reckless but does not require the actual intent to cause harm."[21]

Before an employee is terminated for just cause, the employee must be given notice that the employee's conduct is unacceptable.[22] However, if the employee's actions are "egregious," the employee may be terminated for just cause without a prior warning.[23]

---

[16] *Delaware Auth. for Reg'l Transit (DART) v. Buehlman*, 409 A.2d 1045, 1046 (Del. 1979).

[17] *Barger v. Unemployment Ins. Appeal Bd.*, 2018 WL 4897077, at *2 (Del. Super. Oct. 9, 2018).

[18] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1222 (Del. 2015) (citing *Edmonds v. Kelly Servs.*, 2012 WL 4033377, at *2 (Del. Sept. 12, 2012)).

[19] *Id.* (internal quotations omitted); *Unemployment Ins. Appeal Bd. v. Martin*, 431 A.2d 1265, 1267 (Del. 1981).

[20] *Farmer v. E.I. Du Pont De Nemours and Co.*, 1994 WL 711138, at *3 (Del. Super. Nov. 9, 1994).

[21] *Id.*

[22] *Optima Cleaning Sys.*, 2010 WL 5307981, at *3 (citing *MBNA America Bank v. Capella*, 2003 WL 1880127, at *3 (Del. Super. Apr. 15, 2003)).

[23] *Id.* ("If an employee's actions are egregious . . . then the employer may terminate the employee without any notice."); *see also Tuttle v. Mellon Bank of Delaware*, 659 A.2d 786, 789 (Del. 1995) ("Wilful or wanton conduct constitutes grounds for immediate dismissal without notice if sufficiently serious.").

Here, DTCC terminated Binns's employment without notice.[24] Therefore, for his termination to be on the basis of just cause, Binns's failure to report the Note promptly must have been "egregious."[25] The Board held that Mr. Binns's failure to report the Note was not "sufficiently serious"[26] to warrant termination without warning, *i.e.*, that it was not "egregious." The Board provided four reasons for its decision, which the Court finds to be supported by substantial evidence and free from legal error.

### A. The specific reasons provided by the Board for its decision demonstrate that the decision is supported by substantial evidence and free from legal error.

First, the Board reasoned that because DTCC failed to demonstrate that the Note could only be read as a suicide note, the evidence did not show that a reasonable reading of the Note would lead to the conclusion that immediate action must be taken. DTCC argues that the Board erred by "requir[ing] [DTCC] to prove that the [N]ote could have no other reasonable interpretation other than that the writer intended to commit suicide . . . ."[27]

It is true that "absolute certainty"[28] as to the writer's intent behind the Note may not have been necessary for the Board to conclude that Binns should have taken immediate action. However, DTCC's argument is unpersuasive because it bore the

---

[24] Bd. Order at 6 (R. at 268) ("There is no dispute that [Binns] was terminated without a prior warning."). Indeed, prior to the incident in question Binns had received positive reviews from DTCC, stating that "[h]e is timely, dependable and willing and able to take on extra duties" (R. at 104:8-9); that he either met or exceeded standards (R. at 230:16-18); that he "has learned the public safety procedures for the campus and has also become proficient with the reporting writing programs and required documentation for reports" (R. at 231:4-8); and that he "is always alert on post and is aware of his surroundings" (R. at 231:21-22). Regarding prior discipline, Binns had been issued a written counseling memorandum for watching football on his cellular telephone during his shift. Referee Order at 2 (March 6, 2019) (R. at 16).

[25] *Optima Cleaning Sys.*, 2010 WL 5307981, at *3.

[26] Bd. Order at 6 (R. at 268) (citing *Tuttle*, 659 A.2d at 789).

[27] DTCC Opening Brief at 2.

[28] *Id.* at 9.

burden of proof before the Board,[29] and the Board held it to that burden. The Court finds that the evidence before the Board was sufficient to support the finding that "the [N]ote is vague and hard to understand; it is not clear whether the writer intended to cause herself grave harm or merely just to leave the area."[30] DTCC attempts to quote several of the Note's sentences, all of which allegedly support DTCC's argument that the Note was a "suicide note."[31] DTCC has failed to point out, however, that a number of the words purportedly "quoted" are illegible or unclear, and that DTCC has surmised what those words are. This serves only to emphasize that it was the Board's role, not counsel's or this Court's, to examine the record and draw conclusions therefrom.[32] Given the Board's "experience and specialized competence,"[33] the Court finds no reason to reverse the Board's finding that Binns's failure to report immediately the "vague and hard to understand" Note did not constitute "sufficiently serious" misconduct warranting termination without warning for just cause.[34]

Second, the Board noted that the actions of the Instructor after finding the Note weighed against the conclusion that there was a threat to the writer's life. DTCC argues that "whether or not the [I]nstructor immediately recognized the potential threat to the writer is not relevant."[35] DTCC further argues that the Board's decision on this matter is not supported by substantial evidence because, unlike the Instructor, Binns had an extensive background as a police officer and had a duty to

---

[29] *Murphy & Landon,* 121 A.3d at 1222.

[30] Bd. Order at 6 (R. at 268). The Note is found in the Record at 27-28.

[31] DTCC Reply Br. at 4.

[32] *See Optima Cleaning Sys.,* 2010 WL 5307981, at *2 (appellate court does not weigh evidence or make its own factual findings).

[33] 29 *Del. C.* § 10142(d).

[34] Bd. Order at 7 (R. at 269) (citing *Tuttle,* 659 A.2d at 789).

[35] DTCC Opening Br. at 16.

prevent harm to DTCC's students. DTCC argues that this Court should look to Gary's conduct after reviewing the Note, rather than the Instructor's.

The Court rejects DTCC's argument because it again asks the Court to make its own factual findings. For example, if this Court were to reverse the Board's decision on the basis that the Instructor's conduct was "not relevant,"[36] then it would be usurping the Board's duty to weigh the evidence.[37] Further, if this Court were to contrast Binns's conduct to that of Gary, then the Court would be holding that Mr. Gary's conduct represented a minimum standard of conduct – again, a usurpation of the Board's duty to weigh the evidence. Therefore, the Court will not disturb the Board's finding that the Instructor's conduct regarding the Note was instructive as to the gravity, or lack thereof, of Binns's actions.

Third, the Board reasoned that Binns's delay in showing the Note to another person was not unreasonable because the Note was not clearly a suicide note, and because it was unknown how long the Note had been in the parking lot or in other people's possession before it was given to Binns. As explained *supra*, the Board's conclusion that the Note was unclear is supported by substantial evidence. Further, the Court finds no reason to question the weight that the Board put on the fact that at the time of reading the Note, Binns did not know how long it had been in the parking lot. Therefore, the Board's reasoning on this matter will not be disturbed.

The Board's fourth reason in support of its decision was that DTCC failed to demonstrate that Binns had been trained on suicide prevention or on how one in his position should handle the discovery of a potential suicide note. DTCC responds that it would be unreasonable "to expect [it] to conduct training for every possible

---

[36] *Id.*

[37] *Optima Cleaning Sys.*, 2010 WL 5307981, at *2.

8

situation where the conduct of an employee may come into question,"[38] citing *Unemployment Insurance Appeal Board v. Martin* in support of this contention.[39]

In *Martin*, a husband and wife, employees of the same company, had asked their supervisor if they could leave work early that day.[40] The supervisor denied this request because the husband and wife claimants did not provide a sufficient reason for needing to leave early, and because the employer needed their presence that day due to exigent circumstances.[41] Later that morning, a meeting was held between the claimants, a union representative on their behalf, the supervisor, and other officials to discuss the request to leave early.[42] Again, their request was denied, and they were "explicitly warned that their failure to remain at work through their scheduled shift would result in termination of their employment."[43] The claimants "ignore[d]" this order and left early, and the employer terminated their employment for doing so.[44] The Supreme Court held that the claimants were terminated from employment for just cause because they acted "voluntarily, intentionally and deliberately" against the employer's interests and their duties as employees.[45]

Here, the Court finds that *Martin* fails to support DTCC's arguments in this case. In *Martin*, the claimants were "explicitly warned"[46] and failed to "obey a direct, unequivocal, reasonable order of the employer . . . ."[47] In contrast, Binns was not "explicitly warned" about his conduct regarding potential suicide notes, nor did he fail "to obey a direct, unequivocal, reasonable order" from DTCC to show the

---

[38] DTCC Reply Br. at 18.
[39] *Id.* at 17 (citing *Unemployment Ins. Appeal Bd. v. Martin*, 431 A.2d 1265 (Del. 1981)).
[40] *Martin*, 431 A.2d at 1266.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* at 1267.
[46] *Id.* at 1266.
[47] *Id.* at 1268.

Note to a superior or colleague. The facts of *Martin* are distinct from those of the present case, and DTCC fails to explain how the Board's fourth reason for its conclusion contradicted this Court's holding in *Martin*. Indeed, *Martin* did not discuss or review an issue regarding employee training.

**B. The Board did not commit legal error in holding that Binns should not have been terminated without prior warning.**

DTCC also argues that the Board committed legal error in holding that Binns should have received notice that his conduct was unacceptable and warranted dismissal for just cause. In support of this argument, DTCC cites three decisions of this Court, *Shaw v. Happy Harry, Inc.*,[48] *Civic Health Services, LLC v. Imbragulio*,[49] and *Optima Cleaning Systems*.[50]

On December 4, 2019, after DTCC had cited *Civic Health Services* in its Opening Brief, the Delaware Supreme Court dismissed the appeal from the Superior Court decision in *Civic Health Services* on procedural grounds and directed this Court to vacate its judgment, holding that the Board's decision granting benefits would remain final. In a letter dated February 27, 2020, DTCC conceded that it could no longer rely on *Civic Health Services* because the decision had been vacated. However, DTCC argued that a decision cited by *Civic Health Services*, *i.e.*, *Krieg v. Unemployment Insurance Appeal Board of the Department of Labor of Delaware*,[51] is persuasive in this case.

In *Krieg*, an electrician was fired by his employer (an electric company), without prior warning, for soliciting customers for his personal electrical contracting business.[52] The Board found that he had been fired for just cause, holding that

---

[48] 1993 WL 489499 (Del. Super. Oct. 27, 1993).
[49] 2019 WL 1941474 (Del. Super. May 1, 2019), *appeal dismissed*, 2019 WL 6521983 (Del. Dec. 4, 2019).
[50] *See* n. 7 *supra*.
[51] 1984 Del. Super. LEXIS 670 (Del. Super. Feb. 8, 1984).
[52] *Id.*

10

"solicitation of the business of his employer can be viewed as nothing less than a willful act and violation of the employer's interest and expected standard of conduct," and this Court affirmed.[53]

In *Shaw*, one of the employer's customers found over one hundred dollars on a sidewalk outside of the employer's store.[54] The customer took the money into the employer's store and handed it to the claimant, who was the employer's head cashier at the time.[55] The claimant did not inform the employer or any of her co-workers of the incident, and she took the money home at the end of her shift.[56] The next day, the employer found out about the claimant's actions and terminated her.[57] The Board found that the claimant had been terminated for just cause.[58] On appeal to this Court, the claimant made several arguments, one of them being that her dismissal was not for just cause because the employer had not informed her of its procedures for lost and found items.[59] This Court rejected her argument, holding that there was substantial evidence in the record that the claimant was aware of the employer's policies regarding such items[60] and that the claimant "had previously handled" lost and found items in the past.[61] Given these facts, this Court in *Shaw* held that the claimant "either knew or should have known that she had a duty to report" and therefore had been fired for just cause.[62]

---

[53] *Id.* at *2.
[54] *Shaw*, 1993 WL 489499, at *1.
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.* at *2.
[61] *Id.* ("[The claimant] testified that she would normally hold lost items, such as keys and gloves, at the front of the store until the items were claimed.").
[62] *Id.* at *3.

In *Optima Cleaning*, the claimant was terminated from employment for poor supervisory judgment, poor administrative performance, and the "key incident."[63] Regarding the "key incident," the claimant's supervisor had explicitly ordered the claimant not to let a certain set of keys out of his possession.[64] Subsequently, the keys were used by a fellow employee, thereby indicating that the claimant had disobeyed his supervisor's instructions.[65] The Board held that the claimant was not terminated for just cause because his prior citations involved a wide range of issues, and the "key incident" was an "isolated inadvertence, rather than the product of willful or wanton behavior."[66] The Board reasoned that the employer had failed to show that the claimant had violated one of its stated policies, and that it had failed to warn him that his conduct with the keys could lead to termination from employment.[67] On appeal, this Court held that although an employee may be terminated for just cause for violating a *stated* company policy, he may also be terminated for conduct that is "adverse to the employer's interest, the employee's duties, or the employee's expected standard of conduct."[68] Therefore, because the claimant was terminated from employment for violating the employer's implicit interests, the Board had erred in failing to consider whether the claimant's actions were adverse to the employer's interests,[69] and the Board had also erred in failing to address whether the employee's conduct was so egregious that a warning was unnecessary.[70]

---

[63] *Optima Cleaning*, 2010 WL 5307981, at *1. The claimant in *Optima Cleaning* had previously been cited for eleven different instances of misconduct, all unrelated to the "key incident." *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id.* at *2.
[67] *Id.*
[68] *Id.* at *3 (citing *Moeller v. Wilmington Savings Fund Soc'y*, 723 A.2d 1177, 1179 (Del. 1999) (internal quotations omitted)).
[69] *Id.*
[70] *Id.* at *4.

The Court rejects DTCC's arguments under *Krieg*, *Shaw*, and *Optima Cleaning*. *Krieg* is unpersuasive because Binns did not deliberately, intentionally, or willfully act in a manner that was adverse to DTCC's interests. While the electrician in *Krieg* willfully acted in a manner contrary to his employer's interests, in that he attempted to take away its customers, Binns merely made an error in judgment.[71]

In *Shaw*, the claimant had experience handling lost and found items,[72] and therefore the claimant "either knew or should have known that she had a duty to report" the customer's finding.[73] Here, there was no evidence before the Board that Binns had previously dealt with a document that could arguably be considered a suicide note.

In *Optima Cleaning*, the Board had made an error of law in that it based its final decision on the fact that the employer had failed to show that the claimant had violated a *stated policy*.[74] Here, by contrast, the Board did not base its decision on a finding of whether Binns had violated a stated policy. Further, the Board in *Optima Cleaning* failed to address whether the employee's conduct was so egregious that a warning was unnecessary.[75] Here, the Board presented and discussed four reasons that Binns's conduct was not "sufficiently serious" to allow dismissal without a prior warning.

The Court agrees with Binns that another decision of this Court, *MBNA America Bank v. Capella*,[76] is persuasive. In *Capella*, the employee was terminated

---

[71] Bd. Order at 7 (R. at 269) ("While it may not have been the best course of action, [Binns's] conduct here does not rise to the level of 'sufficiently serious' misconduct such that he could be terminated for just cause without a prior warning.").

[72] *Shaw*, 1993 WL 489499, at *2.

[73] *Id.* at *3.

[74] *Optima Cleaning*, 2010 WL 5307981, at *3.

[75] *Id.* at *4.

[76] 2003 WL 1880127 (Del. Super. Apr. 15, 2003).

from employment, without notice, for disconnecting customer calls.[77] The Board noted that although it was against the employer's interests to release the calls prematurely, it believed her testimony that she did not do so intentionally.[78] Further, even if she had released the calls intentionally, such actions did not rise to the level of willful or wanton misconduct.[79]

On appeal, this Court noted that there was "no evidence that [the employee] had a previous record of similar conduct."[80] Further, in her five years of employment, she had only been given one warning, on an unrelated issue.[81] Additionally, she had just been given an excellent six-month review prior to her termination.[82] This Court, affirming the Board, distinguished *Martin* on the grounds that the employees in *Martin* had been given explicit warnings that if they disobeyed an order they would be terminated from employment.[83]

Here, as in *Capella*, Binns had received strong reviews regarding his employment, and had received only one previous warning, regarding unrelated conduct. Further, as in *Capella*, the Board found that Binns's conduct did not rise to the level of willfulness or wantonness given the evidence before it. Moreover, if this Court upheld the Board's finding in *Cappella* that the employee's disconnection of phone calls did not constitute willful or wanton misconduct, then the Court should uphold the Board's decision in this case that Binns's conduct was not "sufficiently serious" to justify termination without warning given the substantial evidence before the Board summarized in its decision.

---

[77] *Id.* at *1.
[78] *Id.* at *2.
[79] *Id.*
[80] *Id.* at *3.
[81] *Id.*
[82] *Id.*
[83] *Id.*

## IV. CONCLUSION

The Board provided four reasons for its conclusion that Binns's conduct was not sufficiently serious to warrant dismissal for just cause without prior warning. Each reason was supported by substantial evidence. The Board's decision was also free from legal error. Therefore, the decision of the Board is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress*
oc:   Prothonotary
cc:   Counsel of Record

15