# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WILLIAM FOREMAN,             :
:    C.A. No.: K24A-07-001 JJC
        Appellant,         :
:
        v.                  :
:
AQUA PRO, INC and         :
UNEMPLOYMENT INSURANCE    :
APPEAL BOARD,            :
:
        Appellees.        :

Submitted: October 11, 2024
Decided:    December 5, 2024

## ORDER

On this 5th day of December 2024, having considered Appellant William Foreman's appeal of the decision of the Unemployment Insurance Appeal Board (the "Board" or "UIAB"), the parties' briefing,[1] and the UIAB's record, it appears that:

1. Mr. Foreman appeals a UIAB determination that Aqua Pro, Inc. ("Aqua Pro") terminated him for just cause which, in turn, disqualified him from receiving unemployment insurance benefits. Mr. Foreman worked for Aqua Pro as an operational supervisor until he was terminated on May 15, 2023.[2] Following his

---

[1] The Court has considered only the opening and answering briefs. The Court issued a delinquent brief notice (D.I. 13) pursuant to Superior Court Civil Rule 107(f) after Mr. Foreman declined to file a reply brief which was due on September 23, 2024. After the expiration of the ten days provided in the Rule 107(f) notice, the Court entered a written order (D.I. 14) clarifying that the matter was submitted for decision effective October 11, 2024.

[2] Ref. Hr'g, R. at 172:4–17 [hereinafter the Court will refer to the certified record before the Board at "R. at . . ."].

termination, he filed a claim for unemployment insurance benefits. Initially, a Division of Unemployment Insurance claims deputy found Mr. Foreman ineligible to receive benefits because Aqua Pro discharged him for just cause.[3]

2.      Mr. Foreman then appealed the claims deputy's finding to an Appeals Referee (the "Referee").[4] At the hearing, Aqua Pro did not appear so the Referee conducted the hearing with only Mr. Foreman present.[5] Based solely on Mr. Foreman's testimony, the Referee reversed the claims deputy's decision, finding that Mr. Foreman was eligible to receive unemployment benefits because Aqua Pro had failed to meet its burden of establishing just cause for termination.[6]

3.      Aqua Pro then appealed the Referee's decision. The UIAB remanded the matter to the Referee to provide Aqua Pro the opportunity to participate in the hearing and to present evidence.[7] At the second hearing, Mr. Foreman and an Aqua Pro representative appeared, and the Referee found for Aqua Pro.[8] The Referee found that Mr. Foreman had been terminated for just cause, and that he was disqualified from receiving benefits.[9] Mr. Foreman then appealed the decision to the UIAB.[10]

4.      At the UIAB hearing, Mr. Foreman challenged the veracity of the evidence presented against him at the referee hearing.[11] Aqua Pro countered by

---

[3] R. at 198.
[4] R. at 197.
[5] R. at 166.
[6] R. at 163.
[7] R. at 153; R. at 12, n.1.
[8] R. at 68.
[9] *Id.*
[10] R. at 63.
[11] *See generally* R. at 31–51. Specifically, Mr. Foreman contended that he never received or signed a written warning—as evidenced by an exhibit Aqua Pro presented at the referee hearing—or received verbal counselling that his conduct could result in termination if it continued. Aqua Pro conceded that Mr. Foreman did not sign the written warning; rather, it contended that the exhibit served as only a record of his verbal counseling. To that end, Aqua Pro maintained that Mr.

emphasizing the evidentiary value of what it had proffered at the referee hearing.[12] The Board then affirmed the Referee's decision after considering the parties' respective positions and weighing the evidence presented.[13]

5.    The UIAB's decision confirms that the Board considered the record developed at both referee hearings and the additional evidence presented at the Board hearing.[14]  Noteworthy evidence of record included Aqua Pro management's handwritten notes, text messages, a GPS log, and a written warning issued to Mr. Foreman.[15]  Aqua Pro sought to prove that Mr. Foreman failed to adequately perform his job duties.[16]  This evidence also recorded several instances of Mr. Foreman's alleged misconduct, and the verbal counseling that followed.[17]  Mr. Foreman, for his part, contested the credibility of Aqua Pro's evidence.[18]  The Board nevertheless found Aqua Pro's evidence and witness testimony to be credible and convincing.  It

---

Foreman had been verbally counseled about his conduct numerous times and Aqua Pro produced handwritten notes to corroborate those warnings.

[12] *See generally* R. at 45–50.

[13] *See* Decision of the Unemployment Ins. Appeal Bd., R. at 12–16.

[14] *See* 19 *Del C*. § 3320(a) (providing that, "[t]he Unemployment Insurance Appeal Board may on its own motion, affirm, modify, or reverse any decision of an appeal tribunal on the basis of the evidence previously submitted to the appeal tribunal or it may permit any of the parties to such decision to initiate further appeal before it.")  This section grants the UIAB "substantial latitude as to what evidence it may consider[,]" and permits the Board to "base its decision on evidence previously submitted to the Appeals Referee or on new, additional evidence." *Robbins v. Deaton*, 1994 WL 45344, at *4 (Del. Super. Feb. 7, 1994).

[15] Ref. Hr'g. Empl. Ex. 1–6, R. at 72–89.

[16] Mr. Foreman's duties, as an operational supervisor, included the requirement that he communicate with the owners and employees that he supervised.  R. at 108:21.  Failure to communicate or check in with management was cited several times as the ultimate reason for Mr. Foreman's termination.  R. at 100:17–20, 122:18–123:2, 175:11.

[17] Mr. Foreman's alleged misconduct included the following: (1) being unreachable by management and employees under his watch; (2) disappearing from a jobsite, which required management to perform his duties; (3) removing the GPS from a company issued vehicle; (4) using a company issued vehicle for personal use; and (5) totaling a company vehicle and not reporting it for several days. *See generally*, R. at 107–117; Ref. Hr'g. Empl. Ex. 1–6, R. at 72–89.

[18] R. at 36–44.

concluded that Aqua Pro had presented sufficient evidence to demonstrate the just cause necessary to terminate Mr. Foreman.[19]

6. Mr. Foreman now appeals the UIAB's decision.[20] He contends primarily that the Board's finding of just cause is against the weight of the evidence. More specifically, he contends that the Board based its finding on "fraudulent information provided by [Aqua Pro], fabricated after [he] was terminated."[21] In response, Aqua Pro contends that Mr. Foreman fails to identify any factual findings that the record fails to support, and he identifies no error of law committed by the Board.[22]

7. On appeal from a UIAB decision, the Court determines whether substantial evidence supported the Board's findings and whether such findings are free from legal error.[23] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[24] Review of the UIAB's decisions is limited to a review for an abuse of discretion to ensure that the Board has not acted arbitrarily or capriciously, or exceeded the bounds of reason.[25] At this stage, it is not the province of the Court to make its own factual findings, assess witness credibility, or weigh the evidence.[26] Instead, the Court "[s]earch[es]

---

[19] Decision of the Unemployment Ins. Appeal Bd., R. at 14.

[20] 19 *Del. C.* § 3323(a) (providing that, "[w]ithin 10 days after the decision of the Unemployment Insurance Appeal Board has become final, any party aggrieved thereby may secure judicial review thereof by commencing an action in the Superior Court . . . against the Unemployment Insurance Appeal Board for the review of such decision, in which action any other party to the proceeding before the Unemployment Insurance Appeal Board shall be made a defendant.").

[21] Opening Br. (D.I. 9).

[22] Answering Br. at 10 (D.I. 12).

[23] *Brittingham v. Unemployment Ins. Appeal Bd.*, 302 A.3d 429, 2023 WL 4732287, at *1 (Del. Jul. 24, 2023) (TABLE).

[24] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[25] *PAL of Wilmington v. Graham*, 2008 WL 2582986, at *4 (Del. Super. June 18, 2008).

[26] *Sokoloff v. Bd. of Med. Prac.*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

the entire record to determine whether, on the basis of all the testimony and exhibits before the [Board], it could fairly and reasonably reach the conclusion that it did."[27] Moreover, in reviewing the record for substantial evidence, the Court considers the record in the light most favorable to the party that prevailed below.[28]

8. The substantive law that controlled the Board's decision is well settled. Namely, an employee is disqualified from receiving unemployment insurance benefits if the employer had just cause to terminate the employee.[29] Just cause is defined as "a willful or wanton act or pattern of conduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct."[30] To prove willful or wanton conduct by an employee, there must be "either conscious action, or reckless indifference leading to a deviation from established and acceptable workplace performance."[31] The employer bears the burden of establishing just cause by a preponderance of the evidence.[32]

9. Here, Mr. Foreman does not allege an error of law. Accordingly, the only question before the Court is whether there was substantial evidence to support the UIAB's decision. Despite Mr. Foreman's insistence that he had never been counseled about his lack of communication and related misconduct, the Board found that Aqua Pro kept credible records of Mr. Foreman's prior counselling and

---

[27] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674–75 (Del. Super. 1980).
[28] *Gen. Motors Corp. v. Guy*, 1991 WL 190491, at *3 (Del. Super. Aug. 16, 1991).
[29] *See* 19 *Del. C.* § 3314(2) (providing that, "[a]n individual shall be disqualified for benefits . . . [f]or the week in which the individual was discharged from the individual's work for just cause in connection with the individual's work and for each week thereafter . . ..").
[30] *Majaya v. Sojourners' Place*, 2003 WL 21350542, at *4 (Del. Super. June 6, 2003) (quoting *Avon Prods., Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del.1986)).
[31] *MRPC Fin. Mgmt. LLC v. Carter*, 2003 WL 21517977, at *4 (Del. Super. June 20, 2003) (citing *Coleman v. Dep't of Lab.*, 288 A.2d 285, 288 (Del. Super. 1972)).
[32] *Wilson v. Unemployment Ins. Appeal Bd.*, 2011 WL 3243366, at *2 (Del. Super. July 27, 2011). A preponderance of the evidence means the side on which the greater weight of evidence falls. *Taylor v. State*, 748 A.2d 914, 2000 WL 313501, at *2 (Del. Feb. 23, 2000) (TABLE).

5

misconduct.[33] Those records provided evidence that Mr. Foreman had been verbally counseled on multiple occasions about his job performance.[34] Tellingly, Mr. Foreman did not course-correct after those warnings, because the ultimate reason for his termination was the very issue reflected in Aqua Pro's notes—i.e., that he repeatedly failed to communicate with his superiors.[35]

10. Furthermore, the constraints that govern the Court's scope of review in this administrative appeal leave the Court unable to consider Mr. Foreman's primary contention – that Aqua Pro's evidence was false.[36] The record supports the Board's finding that Mr. Foreman's act of removing the GPS from a company vehicle issued to him constituted deliberate behavior intended to prevent his employer from knowing his whereabouts.[37] Evidence of record further supported a finding that (1) Mr. Foreman had been sufficiently warned that his performance was suboptimal, (2) Mr. Foreman did not improve his performance after those warnings, and (3) Mr. Foreman engaged in conduct directly opposed to his employer's interests. The UIAB had the discretion to accept or reject that evidence, in whole, or in part. The record contains substantial evidence to support the Board's decision.

11. In summary, there was ample evidence from which a reasonable mind could conclude that Aqua Pro terminated Mr. Foreman for just cause. The Board committed no error of law. Nor did it abuse its discretion.

---

[33] Decision of the Unemployment Ins. Appeal Bd., R. at 14.

[34] Ref. Hr'g. Empl. Ex. 1 is a compilation of Aqua Pro's handwritten notes regarding incidents concerning Mr. Foreman occurring between November 17–23, 2022. Those notes reflect that Mr. Foreman was informed that his job performance was unacceptable and that if he did not rectify these issues, he may face termination.

[35] R. at 122:18–123:2.

[36] As previously noted, in reviewing the record below, Court *does not make its own factual findings or conclusions, reassess witness credibility, or reweigh the evidence*. The Board found that Aqua Pro's handwritten notes were credible evidence of Mr. Foreman's conduct and verbal discipline. Decision of the Unemployment Ins. Appeal Bd., R. at 16. That ends the Court's inquiry on appeal.

[37] Decision of the Unemployment Ins. Appeal Bd., R. at 14; *see also* R. at 91 ("He removed the GPS tracking unit from our van. He has not been reporting in as continually requested.").

6

**WHEREFORE**, the decision of the Unemployment Insurance Appeal Board is **AFFIRMED** for the reasons explained above.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Resident Judge